UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DREDGING SUPPLY COMPANY, INC. | CIVIL ACTION |
| v. | NO. 06-1744 |
| AMERICAN FIRST INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY | SECTION "F" |

ORDER AND REASONS

Before the Court is Great American's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

Background

This dispute is about who should pay for the loss of the 1999 Piranha Dredge, which sank and was vandalized almost two years after Sioux Redi Mix chartered the Piranha from its owner, Dredging Supply Company.

On June 23, 2003, Dredging Supply leased the Piranha dredge to Sioux Redi Mix. In accordance with Section 6 of the Charter Party, Sioux was required to place hull insurance on the Piranha in an amount no less than $265,000 and furnish owner certificates "for the joint account of" Sioux and Dredging Supply.[1] Sioux's broker

---

[1] Sioux agreed to insure the dredge with a "solvent company for the joint account of owner and Charter owner ... on American Institute term haul's form revised for the full and insurable value of said dredge, but no case less than $265,000.00." Sioux insured the dredge with America First, with original limits in the amount of $265,000, which limits were reduced by Sioux, to $150,000 and naming Dredging Supply on the certificate of insurance

1

furnished a certificate of insurance, which stated that Dredging Supply was a loss-payee on Sioux's inland marine insurance policy with America First.[2]

On October 1, 2003, Sioux filed for Chapter 11 bankruptcy in Oklahoma. The proceeding was later converted to a Chapter 7 bankruptcy.[3]

On June 14, 2004, the Piranha dredge was added to the schedule of vessels on Great American's policy; but the policy excluded from coverage those vessels that Dredging Supply leased or chartered without consent.[4] Dredging Supply did not tell Great American

---

as a loss payee. Dredging Supply also had an insurance policy, through Jensvold as its broker, with Great American.

[2] The certificate provided:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

[3] In its complaint, Dredging Supply asserts that "[f]ollowing the bankruptcy, and by agreement, the Charter Party was accepted by Order of the Bankruptcy Court, and subsequently the lease and any interest in the dredge or the lease were abandoned by the trustee in bankruptcy for [Sioux] and by order of the bankruptcy court."

[4] It provided:

> THIS INSURANCE SHALL BE VOID IN CASE THIS POLICY OR THE VESSEL NAMED HEREIN, SHALL BE SOLD, ASSIGNED, TRANSFERRED OR PLEDGED, OR IF THERE BE ANY CHANGE OF MANAGEMENT OR

that it had chartered the dredge; it did not request, or receive written consent, to do so. That policy was in effect at the time of the loss of the Piranha dredge.

On June 3, 2005, Dredging Supply learned that the Piranha had sunk and had then been vandalized. (The actual date of loss has not been determined). Three days later, Dredging Supply filed a claim with its own carrier, Great American, to recover its losses. Dredging Supply also filed a claim, as a loss payee, against America First.[5] Both insurance companies denied Dredging Supply's claim.

By letter on October 27, 2005, Great American denied Dredging Supply's claim, noting several reasons for denying coverage:

First, Great American noted that Dredging Supply's claim is precluded by the policy's "other insurance" clause, which provides:

> **Other Insurance.** If other valid and collectible insurance exists protecting the Assured against a loss covered by this Policy,

---

CHARTER OF THE VESSEL, WITHOUT THE PREVIOUS CONSENT IN WRITING OF THIS COMPANY.

[5] On July 11, 2005, in response to Dredging Supply's claim, America First sent its insured, Sioux, a reservation of rights/explanation of coverage letter that stated: "The certificate of insurance shows Dredging Supply Co. as a loss payee for the period of 5/13/2003 to 5/13/2004. Our records do not show the certificate was renewed." In the letter, America First listed some key issues as to why America First was reserving its rights and requested additional information from Sioux. (America First also "provid[ed] a copy of this letter to Dredging Supply Company in light of their interest in this equipment and since they have reported the loss to us.")

>this Policy shall be null and void with respect to said loss whether the Assured is specifically named in such other policy of insurance or not; provided, however, that if the applicable limit of liability of such other valid and collectible insurance is not sufficient to protect the Assured against such loss, this Policy shall apply, but only as excess insurance over such other valid and collectible insurance in an amount equal to the applicable limit of liability of this Policy and not as a contributing insurance.

Second, Great American noted that certain Taylor Form policy[6] language voids the policy if the vessel is chartered "without the previous consent in writing" of the underwriters; it is conceded that written permission was not sought or obtained by Dredging Supply. The Taylor Form SP39-C Line 164-166 provides:

>THIS INSURANCE SHALL BE VOID IN CASE THIS POLICY OR THE VESSEL NAMED HEREIN, SHALL BE SOLD, ASSIGNED, TRANSFERRED OR PLEDGED, OR IF THERE BE ANY CHANGE OF MANAGEMENT OR CHARTER OF THE VESSEL, WITHOUT THE PREVIOUS CONSENT IN WRITING OF THIS COMPANY.

Thus, the Great American policy excluded from coverage vessels that

---

[6] Taylor Form SP39-C Line 160-166 provides:

>WARRANTED BY THE ASSURED THAT THERE SHALL BE NO OTHER INSURANCE COVERING PHYSICAL LOSS OR DAMAGE TO THE VESSEL NAMED HEREIN OTHER THAN THAT WHICH IS PROVIDED IN LINES 19 THROUGH 38 HEREOF, BUT PERMISSION IS GRANTED TO CARRY OTHER INSURANCE OF WHATEVER KIND OR NATURE NOT COVERED BY THIS POLICY OR ADDITIONAL AMOUNTS OF INSURANCE OF THE KIND OR NATURE COVERED BY THIS POLICY OTHER THAN AS PROVIDED IN LINES 19 THROUGH 38.

Dredging Supply leased or chartered without underwriter consent; Great American did not consent in writing to provide coverage for the Pirahna dredge.

Great American further asserted that coverage is excluded under the "gear clause", which provides:

> IN CONSIDERATION OF THE PREMIUM BASIS ON WHICH THIS POLICY IS ISSUED, ORDINARY WEAR AND TEAR OR BREAKAGE OF GEAR INCIDENTAL TO THE ACTUAL OPERATION OF DREDGING, THAT IS TO SAY, THE LIFTING OF SPOIL, SHALL NOT BE PAYABLE UNDER THIS POLICY.

Great American noted that its "investigation indicates that the loss resulted from breakage of gear incidental to dredging operations."

Great American also invoked the "watchman warranty", which voids coverage. The Watchman Warranty provides:

> IT IS AGREED THAT WHEN THIS VESSEL IS TIED UP OR MOORED, IT SHALL BE AT ALL TIMES IN CHARGE OF A WATCHMAN IN THE EMPLOY OF THE ASSURED, WHOSE DUTY IT SHALL BE TO MAKE CAREFUL EXAMINATION OF THE VESSEL THROUGHOUT AT REASONABLE INTERVALS, INCLUDING INSPECTION OF THE BILGES.

As a final basis for denying coverage, Great American asserted that Dredging Supply breached the policy's seaworthy clause:

> WARRANTED THAT AT THE INCEPTION OF THIS POLICY THE VESSEL(S) SHALL BE IN A SEAWORTHY CONDITION AND, THEREAFTER, DURING THE CURRENCY OF THE POLICY, THE ASSURED SHALL EXERCISE DUE DILIGENCE TO KEEP THE VESSEL(S) SEAWORTHY, AND IN ALL REGARDS, FIT, TIGHT, AND PROPERLY MANNED, EQUIPPED AND SUPPLIED.

On February 24, 2006, Dredging Supply sued America First and Great American. More than one year later, on May 29, 2007, Dredging Supply filed an amended complaint, adding M.D. Jensvold as a defendant and asserting that "[i]f Great American's denial is upheld, then Jensvold clearly was negligent in failing to procure proper coverage for DSC's operations, including the leasing of dredges."

America First and Jensvold, separately, moved for summary judgment. America First urged the Court to dismiss the plaintiff's claims because Dredging Supply was not a loss payee on its inland marine policy issued to Sioux. Jensvold moved for summary judgment on the ground that Dredging Supply's claim against it was time-barred. The Court granted both motions for summary judgment on March 12, 2008.

Great American now moves for summary judgment, urging the Court to dismiss the plaintiff's claim against it because the Great American policy does not provide coverage to Dredging Supply for the loss of the Piranha dredge.

I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact

6

to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

The parties agree that Louisiana law applies because no federal maritime law controls the policy's coverage.  See Wilburn Boat Co. V. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); see also Thanh Long Partnership v. Highlands Ins. Co., 32 F.3d 189 (5th Cir. 1994) ("[o]rdinarily, the law of the state where the contract was formed governs construction of marine insurance contracts, except where the state law is displaced by admiralty law").

Summary relief is appropriate because no genuine issue of material fact exists: The unambiguous terms of the Great American insurance policy void coverage for Dredging Supply's claimed loss, and Dredging Supply fails to establish that policy reformation by judicial intervention is warranted.

A.   The policy voids coverage for chartered vessels

Construction of a marine insurance policy "usually involves a question of law which can be resolved properly in the framework of a motion for summary judgment." Bonin v. Westport Ins. Corp., 930 So.2d 906, 910 (La. 2006).  Under Louisiana law, an insurance policy is construed using the general rules of contract interpretation, as provided by the Louisiana Civil Code.  See Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003). The Court's role in interpreting insurance contracts under Louisiana law "is to ascertain the common intent of the parties to

the contract." Id. "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning." Id. The Court's approach to a contract's meaning is driven by simple common sense principles.

"An insurance contract...should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." Id. (citation omitted). "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." Id. Indeed, the Court "lack[s] the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." Id. Of course insurers may, through their policies, limit their liability and impose and enforce reasonable conditions upon the policy obligations they contractually assume. See Carbon v. Allstate Ins. Co., 719 So.2d 437, 440 (La. 1998).

Applying these principles to the Great American policy, it seems certain that Dredging Supply's claim is excluded from coverage by the clear policy language: the policy voids coverage if a listed vessel is chartered "without the previous consent in writing of the company." Dredging Supply chartered the Piranha dredge to Sioux without Great American's written consent; Dredging

Supply did not request an endorsement amending the policy language until after the loss was reported.[7]

    B.   Policy reformation is not warranted

Dredging Supply mistakenly contends that "Great American issued an insurance policy to Dredging Supply that did not express the actual intent of Dredging Supply relating to dredge rental coverage." The company urges the Court to intervene, and equitably reform the insurance policy to provide coverage for the Piranha. Great American counters that Dredging Supply cannot show that either party, let alone both, had intended that the policy cover vessels chartered without prior consent, and, therefore, reformation is unwarranted. The Court agrees.

Under Louisiana law, an insurance contract may be reformed if the policy fails to reflect the intent of the parties, either (1) because of mutual error or mistake, or (2) because of a unilateral mistake by the insurer or the agent in drafting the agreement. See Motors Ins. Co. v. Bud's Boat Rental, Inc., 917 F.2d 199, 203 (5th Cir. 1990); see also Pacific Ins. Co. V. Quarles Drilling Corp., 850 F.2d 1087, 1089 (5th Cir. 1988) ("An insurance contract may be

---

[7] Dredging Supply requested that Great American add a "Privilege to Charter" endorsement amendment after the subject loss, for the 2005-2006 renewal. Significantly, on June 30, 2005, *after* the notice of loss was sent to Great American, Dredging Supply's broker, Jensvold, emailed Great American, saying "Upon review of the Hull wording...we need to have the policy endorsed effective immediately to amend the wording in lines 164-166...to allow chartering of the scheduled vessels."

reformed where, because of mutual error, fraud, or mistake by the agent, draftsman, or scrivener, the policy does not conform to the original intentions of the parties")(citation omitted). "Reformation of an insurance contract...is an extraordinary remedy, and the courts exercise it with great caution." <u>Bischoff v. State Farm Fire & Casualty Co.</u>, 1992 WL 31344, at *1 (E.D. La. Feb. 10, 1992) (citation omitted) (Clement, J.). The burden to establish the need for reformation in this case is strict.[8]

One seeking reformation must prove, by clear and convincing evidence, that reformation is warranted. That level of proof applies here. <u>Pacific Ins. Co. V. Quarles Drilling Corp.</u>, 850 F.2d 1087, 1089 (5th Cir. 1988). The Court must be satisfied that no genuine issue as to any material fact exists under plaintiff's higher than usual burden of proof. <u>Id.</u>

The Fifth Circuit emphasizes that "[r]eformation is warranted only...to embody the parties' mutual intent; otherwise, the courts would...be rewriting the contract." <u>Motors Ins. Co. v. Bud's Boat Rental, Inc.</u>, 917 F.2d 199 (5th Cir. 1990) (citations omitted).

Dredging Supply insists that "there is plenty of evidence supporting [its] contention that Great American had knowledge of the business scope" such that the Court should reform the policy.

---

[8] When a party seeks to reform a policy that does not substantially affect the risk assumed by the insurer, the burden of proof is reduced to a preponderance of the evidence. <u>See</u> <u>Green v. SHRM Catering, Inc.</u>, 710 F. Supp. 174 (W.D. La. 1987) (citing <u>Bonadona v. Guccione</u>, 362 So.2d 740 (La. 1978)).

The Court disagrees. Dredging Supply points to its renewal application and its June 14, 2004 addition of the Piranha dredge to the schedule of vessels, asserting that this "could be deemed as ambiguous." Dredging Supply's agent had stated that the dredge was "in Oklahoma", argues Dredging Supply, and this "should have at the very least raised an eyebrow at Great American." Based on this, Dredging Supply rather casually and somewhat wishfully suggests that Great American should have made an inquiry as to why the dredge was in Oklahoma. Dredging Supply seeks equity because it relied generally on Great American to see to it, they pray, that the company was properly insured.

The summary judgment record betrays Dredging Supply's assertion that it was the *mutual* intent of the parties that chartered vessels would be covered by Great American's policy. Indeed, Dredging Supply does not dispute the fact that Great American never ever consented in writing to cover the Piranha dredge.[9] Dredging Supply's own conduct in attempting to secure coverage independently of Great American, through Sioux, is consistent with its patent effort to fill the textual gaps created

---

[9] Again, one must observe, Dredging Supply concedes that the Piranha dredge was not covered by the Great American policy, as written; for example, Dredging Supply states that "Great American issued a policy to Dredging Supply and took insurance premium for a risk which was contrary to the dredge's intended use."

by the provisions and exclusions in the Great American policy.[10]

Great American further points out that its policy had been unchanged since it had first insured Dredging Supply in 2000. Dredging Supply knew, the argument goes, the terms and conditions of the policy. The Court agrees. In fact, Louisiana law imposes a duty on the insured to read and know the insurance policy provisions. See, e.g., Campbell v. Stone Ins. Co., 509 F.3d 665, 671 (5th Cir. 2007). Any claim by Dredging Supply that Great American should have known about their insured's business practices so as to craft a policy that suited its needs is undermined by its own duty to read what is the clear language of the policy, which (for years before the loss of the Piranha) has required Great American's consent for coverage of chartered vessels.[11]

---

[10] The record supports, forces, the conclusion that Dredging Supply acted to protect itself from gaps in the Great American policy; it contradicts Dredging Supply's suggestion that it did not know that its chartered dredges were not covered by Great American's policy. Dredging Supply made arrangements with the charterer to provide insurance coverage that would replace the coverage under Great American's policy that was voided by virtue of Dredging Supply's business practices. Dredging Supply required, as a condition of its charter with Sioux, that Sioux provide Hull and P&I coverage for the Piranha dredge, and name Dredging Supply as an additional loss payee on that policy; the record shows that it was Dredging Supply's intent that coverage for the chartered dredge would be provided by the charterer's insurance carrier, not by Great American.

[11] Dredging Supply's insists that the "Great American policy was intended to cover all of the Dredging Supply's insurance needs" and that Dredging Supply "expected the Great American policy to encompass the entire scope of their business operations, including dredge charters." Unsupported expectations are defeated on summary judgment. Based on the policy language, the duration

Finally, the Court does not abandon the unfortunate circumstances that leave Dredging Supply without coverage for its loss: it chartered its vessel to Sioux, Sioux failed to live up to its contractual obligations to insure the dredge, Sioux caused the dredge to be damaged, and then went bankrupt. But these circumstances alone, on this record, do not overcome by clear and convincing evidence that the Court should intervene and change Great American's policy...which clearly voided coverage for chartered vessels...so as to create coverage and judicially shift the burden of risk that is explicit in the policy language.

Accordingly, Great American's motion for summary judgment is GRANTED. The case is hereby dismissed.

New Orleans, Louisiana, August 13, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

the policy had remain unchanged, and Dredging Supply's own conduct, these arguments are unpersuasive.